Law Offices of Jason M. Ingber, P.C.
Jason M. Ingber (SBN 318323)
3580 Wilshire Blvd., Suite 1260
Los Angeles, California 90010
T:310-270-0089
E-mail: ji@jasoningber.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISCTRICT OF CALIFORNIA

| | |
|---|---|
| Cecilia Maria Valenzuela Serrano, Callie Williams, Timothy Johnson, Brendon Wong, Ramzan Madaev, Dinar Muratov, Asan Sapenov, Christopher Tanton, Jesus Perez, Vitali Haradzetski, Navid Khadem, Vitali Haradzetski, Srikanth Reddy Terupally, Brendon Wong, Daniel Gallegos, Shawn Hall, Jessyka Mathews, Jason Boatright, and Alex Williams on behalf of themselves and members of the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>Toyota Motor Sales, U.S.A., Inc.; Toyota Motor Credit Corporation d/b/a Toyota Financial Services; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Cecilia Maria Valenzuela Serrano, Callie Williams, Timothy Johnson, Brendon Wong, Ramzan Madaev, Dinar Muratov, Asan Sapenov, Christopher Tanton, Jesus Perez, Vitali Haradzetski, Navid Khadem, Vitali Haradzetski, Srikanth Reddy Terupally, Brendon Wong, Daniel Gallegos, Shawn Hall, Jessyka Mathews, Jason Boatright, and Alex Williams on behalf of themselves and members of the general public ("Plaintiffs"), bring this Class Action Complaint against defendant Toyota Motor Sales U.S.A., Inc. ("Toyota USA"), Toyota Motor Credit Corporation ("Toyota Financial"), and DOES 1 through 100 ("Defendants") and allege on behalf of themselves and all consumers that purchased the below described vehicle in California as follows:

## DEMAND FOR JURY TRIAL

1. Plaintiffs hereby demand trial by jury in this class action.

## GENERAL ALLEGATIONS

2. This matter involves the sale of the Toyota Mirai (sometimes, the "Vehicle") with known, but undisclosed factory defects which resulted in the Vehicle being unfit for ordinary use and operable in a manner contrary to written adverts both provided to Plaintiffs at sale and publicized to Plaintiffs prior to sale. The U.S. distributor and warrantor of the subject vehicle is Toyota Motor Sales, U.S.A., Inc. ("Toyota").

3. The Toyota Mirai is "hydrogen-powered," meaning its fuel tank holds liquid hydrogen, used to power an electric motor that propels the Vehicle. The Vehicle was advertised by Toyota and its dealership network as a "zero-emissions" car and with a range of over 400 miles on a single tank of hydrogen. The over-400-mile range was advertised on their hard copy written brochures, advertisements on their website and in such forums on Toyota's website such as https://www.sftoyota.com/blogs/4887/2022-toyota-mirai-epa-estimated-driving-range this link is active through the date of the instant filing.

4. For Plaintiffs, the over-400-mile range was a major selling point for the Vehicle. That meant the Vehicle, unlike many other "zero emissions" vehicles with lower ranges, could be driven as a standard gas powered car. Plaintiffs relied on Toyota's advertising and the salespeople's advertising and representations, that the Vehicle, in fact, could be driven over 400 miles on a single

tank of hydrogen. Plaintiffs would not have purchased the Vehicle if it, in fact, was not capable of achieving the advertised over-400-mile range in ordinary use.

5. Unfortunately, the Vehicle is not capable of being driven anywhere close to 400 miles on a single tank of hydrogen in ordinary use. Toyota's advertising and its dealership network's advertising, are misleading. Despite Plaintiffs' diligent efforts to maximize the Vehicle's range through conservative driving practices, such as refraining from using air conditioning, avoiding rapid acceleration, maintaining moderate speeds, driving steadily with closed windows, and not carrying heavy loads, they have never succeeded in attaining a range exceeding approximately 280 miles per tank under any circumstances. This not only poses a substantial inconvenience for typical drivers like the Plaintiffs but also positions the Vehicle within the range claimed by more affordable "zero-emissions" vehicles that cost only half as much.

6. Moreover, because hydrogen-fueling stations are few and far between, a range of only 250 miles is even more of a detriment.

7. Furthermore, the challenges related to the scarcity and operational reliability of hydrogen refueling stations have significantly compounded the difficulties experienced by Plaintiffs. A disconcerting pattern has emerged, wherein a substantial number of these stations frequently find themselves out of service or plagued by persistent technical malfunctions. Such constant problems with fuel availability or mechanical failures at the pumps have left Plaintiffs grappling with exceedingly inconvenient and distressing situations.

8. In many instances, Plaintiffs are compelled to embark on arduous journeys, often exceeding 50 miles in distance, in their quest to locate an operational hydrogen refueling station. This unforeseen predicament imposes a severe disruption upon their daily lives, forcing them to divert their time, energy, and resources towards addressing an issue that should ideally be seamless and hassle-free.

9. Toyota's sales representatives engaged in a systematic practice of misleading the plaintiffs by consistently promoting the notion that hydrogen and hydrogen prices would inevitably become more economical and accessible than gasoline. This assertion served as a pivotal selling point for the plaintiffs, who were motivated by cost-saving intentions. However, in actuality,

companies such as True Zero and Iwatani have actively exploited every available opportunity to escalate the prices of hydrogen. Notably, just last year, the cost of hydrogen stood at $16 per kilogram, a figure that has since surged to $36 per kilogram today.

10. Furthermore, Plaintiffs face a profound challenge due to the absence of adequate infrastructure for hydrogen vehicle owners, a shortcoming attributed to Toyota, as well as the hydrogen suppliers True Zero and Iwatani. This multifaceted deception imposes substantial and onerous burden upon the Plaintiffs, who find themselves deceived on multiple fronts.

11. Now, many of the Plaintiffs have parked their Vehicles in their garages and are not using them because the cost of driving each mile has become too expensive, primarily due to the absence of operational hydrogen stations and the substantial increase in the cost of hydrogen, which was unforeseen by the Plaintiffs due to the dissemination of misleading information by Toyota sales personnel.

12. Finally, Toyota authorized their resellers to promote the vehicle with distribution of gift cards for hydrogen fuel that were advertised to consumers as certain to pay for fuel for three years into their lease or purchase but those gift cards were swallowed up quickly with the rising prices of hydrogen.

**JURISDICTION AND VENUE**

13. This Court has jurisdiction pursuant to 15 U.S.C. § 1127 and other federal statutes such as 15 U.S.C. § 2310(d)(1). Venue is proper in this district pursuant to 28 U.S.C. § 1391 et seq., as the Defendant corporations regularly conduct business in this district.

**FIRST CAUSE OF ACTION**

**VIOLATION OF SONG-BEVERLY ACT - BREACH OF EXPRESS WARRANTY**

14. Plaintiffs repeat, re-allege, and incorporate by reference all other paragraphs, as if fully set forth herein.

15. At the time Plaintiffs purchased the Vehicle, Toyota Motor Sales Inc., and DOES 1 to 100, expressly warranted the Vehicle was of merchantable quality and that it was fit for its intended use.

16. Defendants breached the express warranty in that the Vehicle was not of merchantable quality and not fit for its intended use.

17. The Vehicle contained multiple manufacturer defects, defects in assembly, design defects, and other defects, rendering the vehicle unsafe and making it impossible for Plaintiffs to use the vehicle without inconvenience, failure, and mechanical breakdown.

18. The subject Vehicle was delivered to Plaintiffs with serious defects and nonconformities to warranty, which encompassed issues such as defects in the fuel cell system, with accompanying notifications that warned plaintiffs of dangerous conditions if they kept driving, as well as problems concerning the Vehicle's range.

19. Pursuant to the Song-Beverly Consumer Warranty Act (hereinafter the "Act") Civil Code sections 1790 et seq. the vehicle constitutes "consumer goods" used primarily for family or household purposes, and Plaintiffs have used the Subject Vehicle primarily for those purposes.

20. Plaintiffs are the "buyers" of consumer goods under the Act.

21. Defendant Toyota USA is a "manufacturer" and/or "distributor" under the Act.

22. The foregoing defects and nonconformities to warranty manifested themselves in the subject Vehicle within the applicable express warranty period. The nonconformities substantially impair the use, value, and/or safety of the vehicle.

23. Plaintiffs delivered the vehicle to an authorized repair facility for repair of the nonconformities.

24. Defendant Toyota USA was unable to conform Plaintiffs' vehicle to the applicable express warranty after a reasonable number of repair attempts.

25. Notwithstanding Plaintiffs' entitlement, Defendant Toyota USA has failed to either promptly replace the new motor vehicle or to promptly make restitution in accordance with the Song-Beverly Act.

26. By failure of Defendant Toyota USA to remedy the defects as alleged above or to issue a refund or replacement vehicle, Defendant are in breach of their obligations under the Song-Beverly Act.

27. Plaintiffs are entitled to all incidental, consequential, and general damages resulting from Defendants' failure to comply with its obligations under the Song-Beverly Act.

28. Plaintiffs are entitled under the Song-Beverly Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees, reasonably incurred in connection with the commencement and prosecution of this action.

29. Because Defendants willfully violated the Song-Beverly Act, Plaintiffs are entitled, in addition to the amounts recovered, a civil penalty of up to two times the amount of actual damages for Toyota USA's willful failure to comply with its responsibilities under the Act. Plaintiffs similarly allege this cause of action under the Magnuson–Moss Warranty Act.

## SECOND CAUSE OF ACTION

## VIOLATION OF SONG-BEVERLY ACT / MAGNUSON-MOSS BREACH OF IMPLIED WARRANTY

30. Plaintiffs incorporate herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

31. Toyota USA and its authorized dealership at which Plaintiffs leased the subject Vehicle had reason to know the purpose of the subject Vehicle at the time of lease of the subject Vehicle. The lease of the Subject Vehicle was accompanied by implied warranties provided for under the law.

32. Among other warranties, the lease of the subject Vehicle was accompanied by an implied warranty that the subject Vehicle was merchantable pursuant to Civil Code section 1792.

33. Pursuant to Civil Code section 1791.1 (a), the implied warranty of merchantability means and includes that the Vehicle will comply with each of the following requirements: (1) The Vehicle will pass without objection in the trade under the contract description; (2) The Vehicle is fit for the ordinary purposes for which such goods are used; (3) The Vehicle is adequately contained, packaged, and labelled; (4) The Vehicle will conform to the promises or affirmations of fact made on the container or label.

34. The subject Vehicle was not fit for the ordinary purpose for which such goods are used because it was equipped with one or more defective vehicle systems/components.

35. The subject Vehicle did not measure up to the promises or facts stated on the container or label because it was equipped with one or more defective vehicle systems/components.

36. The subject Vehicle was not of the same quality as those generally accepted in the trade because it was leased with one or more defective vehicle systems/components.

37. Upon information and belief, the defective vehicle systems and components were present at the time of lease of the subject Vehicle; thus, extending the duration of any implied warranty under *Mexia v. Rinker Boat Co., Inc.* (2009) 174 Cal.App.4th 1297, 1304–1305 and other applicable laws.

38. Plaintiffs are entitled to justifiably revoke acceptance of the subject Vehicle under Civil Code, section 1794, et seq.

39. Plaintiffs hereby revoke acceptance of the subject Vehicle.

40. Plaintiffs are entitled to replacement or reimbursement pursuant to Civil Code, section 1794, et seq.

41. Plaintiffs are entitled to rescission of the contract pursuant to Civil Code, section 1794, et seq. and Commercial Code, section 2711.

42. Plaintiffs are entitled to recover any incidental, consequential, and/or "cover" damages under Commercial Code, sections 2711, 2712, and Civil Code, section 1794, et seq. Plaintiffs similarly allege this cause of action under the Magnuson–Moss Warranty Act.

43. Title 15, United States Code, section 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. The Magnuson-Moss Warranty Act, Chapter 15 U.S.C.A., Section, 2301 et. Seq. is applicable to Plaintiffs' Complaint in that the Vehicle was manufactured, sold and purchased after July 4, 1975, and costs in excess often dollars ($ 10.00).

44. The Vehicle involved in this case are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1); Defendant issued an implied warranty within the meaning of 15 U.S.C. § 2301(7) that the vehicles would be useable. Defendants' product was not useable for the intended purpose because of the reasons described herein. Plaintiff demands those damages pursuant to 15 U.S.C. § 2310(d)(1) and attorney fees and costs on this action pursuant to 15

U.S.C. § 2310(d)(2). Pursuant to 15 U.S.C. § 2308, Plaintiff' Vehicle was impliedly warranted to be substantially free of defects and non-conformities in both material and workmanship, and in safe condition, thus impliedly warranting the Vehicle as fit for the ordinary purpose for which the Vehicle was intended.

### THIRD CAUSE OF ACTION

### FALSE ADVERTISING IN VIOLATION OF LANHAM ACT SECTION 43(a)

45. Plaintiffs incorporate herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

46. The federal Lanham Act allows civil lawsuits for false advertising that "misrepresents the nature, characteristics, qualities, or geographic origin" of goods or services. 15 U.S.C. § 1125(a).

47. California prohibits dissemination of information about products or services that is "untrue or misleading," with both civil and criminal enforcement. CA Bus. & Prof. Code § 17500.

48. The plaintiffs allege that Toyota USA violated the Lanham Act by promoting false and misleading statements, which included assertions about the range of the subject vehicle and the supposed advantages and affordability of hydrogen-powered vehicles compared to gasoline-powered and electric vehicles.

49. The subject Vehicle was advertised by Toyota and its dealership network including Dealer as having "zero-emissions" and a range of over 400 miles on a single tank of hydrogen. The over-400-mile range was advertised on Toyota's website.

50. For Plaintiffs, the over-400-mile range was a major selling point for the Vehicle. That meant the Vehicle, unlike many other "zero emissions" vehicles which had much lower ranges, could be driven in a normal fashion. Plaintiffs relied on both Toyota's written advertising and Dealer's advertising, as well as verbal comments by Dealer's salesperson that the Vehicle, in fact, could be driven over 400 miles on a single tank of hydrogen. Plaintiffs would not have purchased the Vehicle if it, in fact, was not capable of achieving the advertised over-400-mile range in ordinary use.

51. The subject Vehicle is not capable of being driven anywhere close to 400 miles on a single tank of hydrogen in ordinary use. Despite the Plaintiffs' diligent efforts to maximize the

1  Vehicle's range through conservative driving practices, such as refraining from using air conditioning, avoiding rapid acceleration, maintaining moderate speeds, driving steadily with closed windows, and not carrying heavy loads, they have never succeeded in attaining a range exceeding approximately 270 miles per tank under any circumstances.

52.   Another prominent feature was the complimentary $15,000 fuel card that Toyota provided to customers who leased or bought the subject vehicle. At the time, Toyota sales representatives consistently assured Plaintiffs that this fuel card would cover their fuel costs for over three years, considering hydrogen prices ranging from $13 to $16 per kilogram just last year. Furthermore, they were given assurances that these prices would decrease in the future. Plaintiffs were led to believe that the subject Vehicle would be a more cost-effective choice compared to traditional gasoline-powered cars and electric vehicles. Presently, the cost has more than doubled, and filling up the subject Vehicle is now more expensive than refueling the average heavy-duty gas-powered truck. The deceptive statements made by Toyota USA concerning the subject vehicle's range capabilities and the alleged benefits and cost-effectiveness of the subject Vehicle compared to competitors played a significant role in the Plaintiffs' decision to lease or purchase the vehicle, and these statements constitute a direct violation of the Lanham Act.

## FOURTH CAUSE OF ACTION

**VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT – CAL CIV CODE $1750**

53.   Plaintiffs incorporate herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

54.   The CLRA is a nonexclusive statutory remedy for unfair methods of competition and for unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods to any consumer. (*Reveles v. Toyota by the Bay* (1997) 57 Cal.App.4th 1139, 1154.)

55.   Also, Civil Code section 1760 provides that the overall purpose of the CLRA is to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to ensure protection.

56. A CLRA claim based on a material omission, as with Toyota USA's material omission with regard to the subject Vehicle's 400 miles of range, arises when defendants create affirmative misrepresentations while suppressing other material facts within its knowledge but not known to consumers. (*Klein v. Chevron USA, Inc*. (2012) 202 Cal.App.4th 1342,1383.)

57. Civil Code section 1770, subdivision (a)(5) provides that it is unlawful to represent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which they do not in fact have. This is exactly what Toyota USA did. Specifically, Toyota USA asserted that the subject Vehicle boasts a 400-mile range, whereas in truth, the plaintiffs are unable to achieve more than 270 miles on a full tank.

58. Similarly, Civil Code section 1770(a)(7) provides that it is unlawful to represent that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. Toyota USA marketed the subject Vehicle to Plaintiffs by stating that the car featured a 400-mile range. The only reason Toyota USA made this representation was to make it appear that the Vehicle were of a particular standard or quality worth buying. In reality, however, the subject Vehicle only lasts about 280 miles, and in many cases, even less.

59. Furthermore, Toyota USA failed to disclose the significant safety hazards associated with the vehicle. Hydrogen is a highly flammable and explosive substance. While driving, Plaintiffs encountered warnings on their dashboard indicating, "A malfunction in the Fuel Cell System has been detected. Continuing to drive may be hazardous. Pull over in a secure location and get in touch with your Toyota dealer to have your vehicle inspected." After conducting an examination, Toyota never identified a resolution.

60. Toyota USA also allowed their advertisers and agents tell Plaintiffs – falsely – that fuel would grow more accessible and the process would be similar to filling up a tank like a gas car. This was a lie. Fuel is scarce. Pumps frequently do not work.

61. Toyota USA enticed Plaintiffs with a substantial and appealing incentive—the provision of a $15,000 fuel card to cover their hydrogen fuel costs. This incentive was presented to Plaintiffs with specific assurances from Toyota sales representatives that the fuel card would sufficiently cover their fuel expenses for over three years. These assurances were grounded in the

context of hydrogen prices ranging from $13 to $16 per kilogram just the previous year. Furthermore, Plaintiffs were led to believe that these hydrogen fuel prices would decrease in the future, making the subject Vehicle a more cost-effective choice compared to conventional gasoline-powered cars and electric vehicles. Plaintiffs reasonably relied on these assurances when entering into the contract.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT

62.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

63.     Every payment collection by the Defendants is based upon the misrepresentations prior to the incurring any debts.  Therefore, the collection activity is wrongful under the Rosenthal Act, e.g. § 1788.1, subd. (b) as well as under the Fair Debt Collection Practices Act e.g. § 1006.18.

## SIXTH CAUSE OF ACTION

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

64.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

65.     Plaintiffs and Defendants entered into written contracts in which Defendants made specific representations regarding the vehicle's performance, including a claimed 400-mile range, and in which they failed to disclose critical safety risks associated with the hydrogen fuel system. These representations and omissions, as detailed above, form the basis for the argument that Toyota breached the implied covenant of good faith and fair dealing within the context of their contractual obligations.

66.     In the case at hand, it is evident that the Plaintiffs were provided with a vehicle that not only failed to meet the representations made by Toyota USA but also posed significant safety risks that were not adequately disclosed. These actions, taken together, constitute a clear violation of the implied covenant of good faith and fair dealing in the context of the contractual relationship between the Plaintiffs and Toyota USA.

67. Defendants marketed the subject Vehicle to the Plaintiffs with the claim of a 400-mile range. However, as it has been established, the vehicle's actual range falls significantly short of this representation, with the Plaintiffs being unable to achieve more than 270 miles on a full tank. This misrepresentation undermines the fundamental expectation that the parties to a contract deal with each other honestly and fairly. The implied covenant of good faith and fair dealing requires that both parties act in good faith and not undermine the essence of the agreement. By providing false information regarding the vehicle's mileage, Defendants breached this covenant.

68. The safety concerns related to the vehicle's hydrogen fuel system are equally troubling. Hydrogen is widely recognized as a highly flammable and explosive substance. Plaintiffs, while operating their vehicles, received dashboard warnings that clearly indicated a malfunction in the Fuel Cell System, with a caution that continuing to drive is dangerous. These warnings highlight a critical safety issue that was not disclosed at the time of purchase or lease. The implied covenant of good faith and fair dealing encompasses an obligation to provide accurate and complete information to avoid endangering the other party's interests. Defendants' failure to disclose these safety risks and to promptly address them upon inspection constitutes a breach of this covenant.

69. Toyota USA enticed Plaintiffs with a substantial and appealing incentive—the provision of a $15,000 fuel card to cover their hydrogen fuel costs. This incentive was presented to Plaintiffs with specific assurances from Toyota sales representatives that the fuel card would sufficiently cover their fuel expenses for over three years. These assurances were grounded in the context of hydrogen prices ranging from $13 to $16 per kilogram just the previous year. Furthermore, Plaintiffs were led to believe that these hydrogen fuel prices would decrease in the future, making the subject Vehicle a more cost-effective choice compared to conventional gasoline-powered cars and electric vehicles. Plaintiffs reasonably relied on these assurances when entering into the contract. However, the drastic disparity between the promised benefits and the actual cost of fueling the vehicle constitutes a breach of the covenant of good faith and fair dealing.

70. Plaintiffs are entitled to relief and redress for these violations, as they have suffered harm and financial loss as a result of Defendants' actions.

**SEVENTH CAUSE OF ACTION**

## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE

71. Plaintiffs repeat and reallege each and every allegation set forth above as if reasserted and realleged herein.

72. California Business and Professions Code §17200, et seq., prohibits unfair competition, which includes any unlawful, unfair or fraudulent business act.

73. Defendants, by engaging in the acts hereinabove described, has committed violations under the aforementioned statutes and codes; that said acts are therefore per se violations of the California Business and Professions Code Section 17200 et seq.

74. The harm caused by Defendants' conduct outweighs any benefits that Defendants' conduct may have.

75. Consumers like Plaintiffs are likely to be deceived, and that Plaintiffs were in fact deceived, by Defendants' conduct.

76. Defendants were unjustly enriched by committing said acts.

77. As a result of Defendants' conduct, Plaintiffs were harmed and suffer damages including but not limited to: monetary losses, extreme embarrassment, humiliation, shame, stress, anxiety, aggravation and sleepless nights; higher interest rates on certain loan(s); loss of credit; loss of the ability to purchase and benefit from credit; actual credit denials; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

78. That as a direct and proximate result of Defendants' unlawful, unfair and fraudulent business practices as alleged herein, Plaintiffs suffered substantial injury in fact and lost money and/or property.

79. That pursuant to California Business and Professions Code § 17200, et seq., Plaintiffs are entitled to recover their actual damages and restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants Toyota USA and Toyota Financial, as follows:

1. For general, special, punitive and actual damages according to proof at trial and at least $5,000,000 as to the class;

2. For rescission of the Lease Agreement and restitution of all monies expended;

3. For diminution in value;

4. For incidental and consequential damages according to proof at trial;

5. For civil penalty in the amount of two times Plaintiffs' actual damages;

6. For prejudgment interest at the legal rate;

7. For reasonable attorney's fees and costs of suit; and

8. For such other and further relief as the Court may deem just and proper.

**TRIAL BY JURY**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demands, a trial by jury.

Dated: October 30, 2023            LAW OFFICES OF JASON M. INGBER, PC

*/s/ Jason M. Ingber*
Jason M. Ingber
Attorneys for Plaintiffs

**COMPLAINT**