Law Offices of Jason M. Ingber, P.C.
Jason M. Ingber (SBN 318323)
3580 Wilshire Blvd., Suite 1260
Los Angeles, California 90010
T:310-270-0089
E-mail:     ji@jasoningber.com

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## (WESTERN DIVISION – LOS ANGELES)

| | |
|---|---|
| Cecilia Maria Valenzuela Serrano, Charles Abrenica, Callie Williams, Timothy Johnson, Ramzan Madaev, Dinar Muratov, Asan Sapenov, Christopher Tanton, Jesus Perez, Vitali Haradzetski, Navid Khadem, Srikanth Reddy Terupally, Brendon Wong, Danny Gallegos, Shawn Hall, Jessyka Mathews, Jason Boatright, Alex Williams, Sean Parsa, Kevin Lively, Guadalupe Avalos, and John llamos, | Case No.: 2:23-cv-09155-MWF-PVC **FIRST AMENDED COMPLAINT FOR DAMAGES** |

                        Plaintiffs,

            vs.

Toyota Motor Sales, U.S.A., Inc.;
Toyota Motor Credit Corporation d/b/a
Toyota Financial Services; Toyota
Motor Insurance Services, Inc., Toyota
of Orange, Oremor of Tustin, LLC,
Hamcor, Inc. d/b/a Dublin Toyota,
Toyota Santa Monica, Toyota San
Franscico, Longo Toyota, Toyota of
Glendale, and Toyota Sunnyvale, and
DOES 1 through 5, inclusive,

                        Defendants.

Cecilia Maria Valenzuela Serrano, Charles Abrenica, Callie Williams, Timothy Johnson, Brendon Wong, Ramzan Madaev, Dinar Muratov, Asan Sapenov, Christopher Tanton, Jesus Perez, Vitali Haradzetski, Navid Khadem, Vitali Haradzetski, Srikanth Reddy Terupally, Brendon Wong, Danny Gallegos, Shawn Hall, Jessyka Mathews, Jason Boatright, Alex Williams, Sean Parsa, Kevin Lively, Guadalupe Avalos, and John llamos, on behalf of themselves and members of the general public ("Plaintiffs"), bring this First Amended Complaint against defendants Toyota Motor Sales, U.S.A., Inc. ("Toyota" or "Toyota USA"), Toyota Motor Credit Corporation ("Toyota Financial"), Toyota Motor Insurance Services, Inc., (sometimes, the corporate Toyota defendants are collectively referred to as "Toyota") and Toyota of Orange, Oremor of Tustin, LLC, Sullivan Motors, LLC d/b/a Toyota Santa Monica, Hamcor, Inc. d/b/a Dublin Toyota, Toyota Sunnyvale, Toyota Santa Monica, Toyota San Franscico, Longo Toyota, Toyota of Glendale,  (sometimes collectively, the "Toyota Dealerships" or "dealers" or "dealerships") and DOES 1 through 5 ("Defendants") and allege on behalf of themselves and all potential consumers and consumers that purchased the below described vehicle in California[1] as follows:

## **GENERAL ALLEGATIONS**

1.      Toyota Motor Sales, U.S.A., Inc. ("Toyota") runs many red lights in their sales process for the Toyota Mirai, which is marketed as a zero-emissions hydrogen-fueled luxury sedan.

2.      It is industry-known, and Toyota publicly admits, that hydrogen fuel is not fit for ordinary consumer retail motor vehicle use.

3.      Toyota knew that fuel would not be available and accessible to consumers that purchased the Mirai prior to each sale but actively concealed the inordinate problematic nature of refueling cars with hydrogen.

---

[1]      Toyota's sells the Mirai in the United States only in California.

**FIRST AMENDED COMPLAINT**

4.      For example, over two years prior to the filing of the instant action, Shell decides to close every single retail hydrogen fueling station it opened (which is over ten percent of all fueling stations available to Plaintiffs) with the assessment that the installed prototype technology to run their hydrogen station reached the end of its life.

5.      This is a lawsuit brought by and on behalf of current and former owners/lessees of the Toyota Mirai, who were lied to by Toyota via advertisements and statements made by their salespeople in their dealerships to induce the Plaintiffs to purchase or lease the Mirai.

6.      Toyota, through its dealerships, continues to sell the Mirai.

7.      There are two generations of the Mirai, the first, manufactured from 2016 – 2020, and the second from 2021 to the present.

8.      There are two trims for the Mirai, the XLE and the Limited (both generations of the Mirai and their respective models will be referred to herein as the "Mirai").

9.      Toyota sells the Mirai with the knowledge that the car cannot perform per the express and implied warranties of the Mirai.

10.     Toyota advertises that the second generation Mirai has up to a 402-mile fuel capacity per tank.[2]

11.     Toyota dealerships tell Plaintiffs prior to sale and during the sales process that hydrogen fuel is available and refuels for the Mirai are seamless.  Toyota

---

[2]      The 402 mile range is ubiquitous on American websites affiliated or owned by Toyota, and Toyota dealers routinely boast that the Mirai has at least a 402-mile range.  See e.g.: https://www.sftoyota.com/blogs/4887/2022-toyota-mirai-epa-estimated-driving-range; https://www.hollywoodtoyota.com/blog/2021/april/2/toyota-mirai-7-500-california-tax-credit-eligibility.htm; https://www.longotoyota.com/blogs/4337/how-does-the-2023-toyota-mirai-work-how-do-i-fill-it-up/.

Toyota boldly advertises on its Youtube channel that the Mirai has an over 500-mile range "from Osaka to Tokyo."  See, https://www.youtube.com/watch?v=ci1n8_-kj_s, "Toyota Launches the New Mirai" published Dec 8, 2020. The 402 mile range is delineated for the second generation Mirai XLE model, which is the car that the majority of the named Plaintiffs are stuck with.

The second generation Limited Mirai is advertised to achieve a 357-mile range (e.g. https://www.sftoyota.com/blogs/4887/2022-toyota-mirai-epa-estimated-driving-range) and a few named Plaintiffs own that Mirai model as well.  Each of the Mirai versions do not achieve anywhere close to their advertised range.

**FIRST AMENDED COMPLAINT**

explicitly told Plaintiffs that the refueling experience would be similar to refueling with gas.  This is a lie.  Refueling hydrogen is a nightmare.  It takes hours and sometimes fuel is not available.

12.    Toyota fails to disclose and actively conceals prior to and during the sale of the Mirai that hydrogen fuel actually may not be available for days at a time.

13.    Toyota fails to disclose and actively conceals that every hydrogen refuel takes many hours on average.

14.    Toyota fails to disclose and actively conceals that hydrogen fuel pumps often freeze up and lock onto the Mirai, and the car is locked into to the fueling station until an offsite technician arrives.

15.    Toyota lures in consumers to purchase or lease the Mirai with a gift card for $15,000.00 worth of hydrogen fuel with a promise by its salespeople that the gift card will last for three years or more, when the gift cards do not.[3]

16.    Toyota provides consumers with a website that they told Plaintiffs will provide accurate information as to when and where fuel is available (e.g. h2-ca.com) however the information provided on the website is inaccurate which causes people to drive to fuel stations only to see that the station is completely down.

17.    Plaintiffs are often compelled to embark on arduous journeys, often exceeding 50 miles in distance (which eats into the already limited fuel capacity of the Mirai), in their quest to locate an operational hydrogen refueling station. This imposes severe disruptions upon their lives, forcing them to divert their time, and resources towards addressing an issue that should be hassle-free.

18.    Plaintiffs rely on Toyota's advertising and especially Toyota's authorized salespeople's representations, e.g. that the Mirai could be driven 402 miles on a single tank, when deciding to purchase the Mirai.

---

[3]    Plaintiffs were told their gift card would last three years, see e.g. https://pressroom.toyota.com/air-in-water-out-six-interesting-facts-about-fuel-cell-electric-technology/ (equating $15,000 to at least three years of hydrogen), however, the fuel card didn't last three years.

- 4 -

**FIRST AMENDED COMPLAINT**

19.     The Mirai is not capable of anywhere close to 402 miles on a single tank of hydrogen.

20.     Toyota utilizes these sinister lies knowingly, and employs these lies to sell a specious motor vehicle to the general public.

21.     Plaintiffs would not have bought the Mirai had Toyota disclosed the actual fuel range and refueling conditions of the Mirai.

22.     Plaintiffs request an injunction that Toyota stop sales of the Mirai and cease any advertisements related to the 402-mile fuel range for the Mirai.

23.     Plaintiffs' nightmares grow after they attempt to drive the Mirai: the Mirai will sometimes stall; Plaintiffs are also separately struck with error messages on their Mirai that display concerning warnings that the Mirai is not safe to drive and/or needs recalibration, and dealerships cannot fix these issues or clear these concerning fault codes.

24.     Plaintiffs must bring their car in for recalibration numerous times, and must wait for it to be towed and refueled by Toyota, causing their vehicle to be down for days.

25.     Other faults with the Mirai that severely impede on the safety use and enjoyment of the car to Plaintiffs is that the seat heater won't turn off, the car leaks copious water, and critically as mentioned above, the car shuts down or stalls intermittently.

26.     Many Plaintiffs need their Mirai to get to work and others rely on the car to attend medical appointments and cannot reliably do so.

27.     Many days are wasted looking and waiting for fuel that can never be given back to the Plaintiffs.

28.     The fact that Toyota continues to advertise these cars after Toyota executives publicly stated the technology cannot work (as there aren't enough fueling stations for retail cars), reveals Toyota's sales representatives engage in systematic misrepresentations to the California public.

**FIRST AMENDED COMPLAINT**

29.    Now, many of the Plaintiffs have parked their Mirai in their garages and are not using them because the headaches and cost of driving each mile have become excessively prodigious.

30.    Toyota also compels Plaintiffs to charge car rentals and other fees to their credit cards when prohibitive concerns with the Mirai arise (and even if and when Toyota refunds these charges) Plaintiffs are burdened with ensuring they timely pay off expensive charges on their credit cards or else experience their credit score plummet.

31.    Toyota utilizes these lies to lure consumers into lucrative sales contracts with Toyota Motor Credit Corporation d/b/a Toyota Financial Services ( "Toyota Financial Services" or "TFS") and this contract creates a false debt as the contract itself is built on lies, and the consumers are trapped making hefty monthly payments or else they face a credit score drop.

**JURISDICTION AND VENUE**

32.    This Court has jurisdiction pursuant to 15 U.S.C. § 1127 and other federal statutes such as 15 U.S.C. § 2310(d)(1).  Venue is proper in this District pursuant to 28 U.S.C. § 1391 et seq., as the Defendant corporations regularly conduct business in this District.

**FIRST CAUSE OF ACTION**

**VIOLATION OF SONG-BEVERLY ACT / MAGNUSON-MOSS**

**BREACH OF EXPRESS WARRANTY**

**(AGAINST TOYOTA MOTOR SALES, U.S.A., INC.)**

33.    Plaintiffs re-allege and incorporate all other paragraphs as if fully set forth herein.

34.    Toyota provided an express warranty whereby all component parts and systems are covered for the sooner of 12 months or 12,000 miles or 36 months and 36,000.

- 6 -

**FIRST AMENDED COMPLAINT**

35.     Under the Song-Beverly Consumer Warranty Act (the "California Lemon Law"), the Mirai is a "consumer good" purchased primarily for family or household purposes and Plaintiffs used the vehicle primarily for those purposes. Plaintiffs are "buyers" of consumer goods under the California Lemon Law.

36.     The foregoing defects and nonconformities to warranty manifested themselves within the applicable express warranty period. The defects and nonconformities substantially impair the use, value and/or safety of the Mirai.

37.     Plaintiffs delivered the vehicle to authorized repair facilities for Toyota Mirai vehicles for repair of the nonconformities on numerous occasions.

38.     Such authorized repair facilities were unable to conform the Toyota Mirai to the applicable express warranties after a reasonable number of attempts.

39.     By failure of Toyota to remedy the defects as alleged herein, or to issue a refund or replacement, Toyota is in breach of its obligations under the California Lemon Law.

40.     Plaintiff is entitled to justifiably revoke acceptance of Toyota Mirai under the California Lemon Law.

41.     Under the California Lemon Law, Plaintiff are entitled to reimbursement of all payments made towards the Mirai.

42.     Plaintiffs are entitled to damages resulting from Toyota's failure to comply with its obligations under the California Lemon Law.

43.     Specifically, under the California Lemon Law Toyota has an affirmative obligation to offer to repurchase or replace the Mirai after Toyota was unable to repair the defect within a reasonable number of attempts. However, Toyota failed to offer to repurchase or replace the Mirai, and misrepresented to Plaintiff that it had no such obligation.

44.     Toyota breached express warranties in that the Mirai was not of merchantable quality (early recalibration fault messages; deeply concerning fault

**FIRST AMENDED COMPLAINT**

codes that dealers could not explain or clear; car leaks excessive water, seat heaters remain on the highest setting at all times) and not fit for its intended use.

45.    Toyota breaches warranties made to consumers with advertisements that the car achieves 402 miles per tank when it does not.

46.    Toyota breaches warranties by having Plaintiffs return to dealerships for numerous recalibrations to the vehicle after they could not drive the vehicle for many miles for personal use.

47.    The Mirai's multiple defects make it more than likely for Plaintiffs to use the vehicle with inconvenience, failure, and mechanical breakdown.

48.    The Mirai was delivered to Plaintiffs with serious defects and nonconformities to warranty.

49.    The foregoing defects and nonconformities to warranty manifested themselves in the Mirai within the applicable express warranty period.

50.    Nonconformities substantially impair the use, value, and safety of the Mirai.

51.    Toyota has failed to either promptly replace the new motor vehicle or to promptly make restitution in accordance with the Song-Beverly Act.

52.    By failure of Toyota to remedy the defects as alleged above or to issue a refund or replacement vehicle, Defendants are in breach of their obligations under the Song-Beverly Act.

53.    Plaintiffs are entitled to all incidental, consequential, and general damages resulting from Defendants' failure to comply with its obligations under the Song-Beverly Act.

54.    Plaintiffs are entitled under the Song-Beverly Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees, punitive treble damages reasonably incurred in connection with the commencement and prosecution of this action.

**FIRST AMENDED COMPLAINT**

55.    Because Toyota willfully violates the Song-Beverly Act, Plaintiffs are entitled, in addition to the amounts recovered, a civil penalty of up to two times the number of actual damages for Toyota's willful failure to comply with its responsibilities under the Act.  Plaintiffs similarly allege this cause of action under the Magnuson–Moss Warranty Act, especially in that the Act does not allow any such state law be limited, see e.g. 15 U.S.C. § 2301(10) §§ 104(a)(2). 108, 15 U.S.C. §§ 2304(a)(2), 2308.

## SECOND CAUSE OF ACTION

### VIOLATION OF SONG-BEVERLY ACT / MAGNUSON-MOSS

### BREACH OF IMPLIED WARRANTY

### (AGAINST TOYOTA MOTOR SALES, U.S.A., INC.)

56.    Plaintiffs incorporate herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

57.    At the time Plaintiffs purchased the Mirai, Toyota warranted to Plaintiffs that the Mirai was of merchantable quality (worked like a regular gas-powered car) and that it was fit for its intended use (e.g. that its fuel capacity was 400+ miles on a single tank, refueling would be seamless [it is common for Plaintiffs to have to tow their Mirai due to fuel outages; sit for hours to fuel; wait for a technician arrives to unfreeze fuel pump handles].

58.    Among other warranties, the lease or purchase of the Mirai was accompanied by an implied warranty that the Mirai was merchantable pursuant to California Civil Code section 1792.

59.    Pursuant to California Civil Code section 1791.1 (a), the implied warranty of merchantability means and includes that the Mirai will comply with each of the following requirements: (1) The Mirai will pass without objection in the trade under the contract description; (2) the Mirai is fit for the ordinary purposes for which such goods are used (e.g. refueling would be straightforward and not time consuming); (3)

**FIRST AMENDED COMPLAINT**

the Mirai is adequately contained, packaged, and labelled; (4) the Mirai will conform to the promises or affirmations of fact made on the container or label.

60.    The Mirai was not fit for the ordinary purpose for which such goods are used because it was equipped with one or more defective vehicle systems/components.

61.    The Mirai did not measure up to the promises or facts stated on the container or label because it was equipped with one or more defective vehicle systems/components.

62.    The Mirai was not of the same quality as those generally accepted in the car market because it was leased or sold with numerous defective vehicle systems/components.

63.    The defective vehicle systems and components were present at the time of lease of the subject Vehicle; thus, extending the duration of any implied warranty under *Mexia v. Rinker Boat Co., Inc.* (2009) 174 Cal.App.4th 1297, 1304–1305 and other applicable laws.

64.    Plaintiffs are entitled to justifiably revoke acceptance of the subject Vehicle under Civil Code, section 1794, et seq.

65.    Plaintiffs hereby revoke acceptance of the Mirai.

66.    Plaintiffs are entitled to replacement or reimbursement pursuant to Civil Code, section 1794, et seq.

67.    Plaintiffs are entitled to rescission of the contract pursuant to Civil Code, section 1794, et seq. and Commercial Code, section 2711.

68.    Plaintiffs are entitled to recover any incidental, consequential, and/or "cover" damages under Commercial Code, sections 2711, 2712, and Civil Code, section 1794, et seq.    Plaintiffs similarly allege this cause of action under the Magnuson–Moss Warranty Act.

69.    Title 15, United States Code, section 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. The Magnuson-Moss Warranty Act, Chapter 15 U.S.C.A.,

**FIRST AMENDED COMPLAINT**

Section, 2301 et. Seq. is applicable to Plaintiffs' Complaint in that the Vehicle was manufactured, sold and purchased after July 4, 1975, and costs in excess often dollars ($ 10.00).

70.     The Mirai is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1); Defendant issued an implied warranty within the meaning of 15 U.S.C. § 2301(7) that the vehicles would be useable. Pursuant to 15 U.S.C. § 2308, Plaintiffs' Vehicle was impliedly warranted to be substantially free of defects and non-conformities in both material and workmanship, and in safe condition, thus impliedly warranting the Vehicle as fit for the ordinary purpose for which the Vehicle was intended.

71.     Defendants' product was not useable for the intended purpose because of the reasons described herein.  Plaintiffs demand damages pursuant to 15 U.S.C. § 2310(d)(1) and attorney fees and costs on this action pursuant to 15 U.S.C. § 2310(d)(2).

## THIRD CAUSE OF ACTION

### FALSE ADVERTISING IN VIOLATION OF LANHAM ACT SECTION 43(a)
### (AGAINST TOYOTA MOTOR SALES, U.S.A., INC.)

72.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

73.     The federal Lanham Act allows civil lawsuits for false advertising that "misrepresents the nature, characteristics, qualities, or geographic origin" of goods or services. 15 U.S.C. § 1125(a).

74.     California prohibits dissemination of information about products or services that is "untrue or misleading," with both civil and criminal enforcement. CA Bus. & Prof. Code § 17500.

75.     Toyota violated the Lanham Act by promoting misleading statements, which include assertions about the range of the Mirai and the supposed reliability of

- 11 -
**FIRST AMENDED COMPLAINT**

hydrogen fuel and the duration of time that the fuel cards would retain their value, and the extent the actual car would retain its value.

76. The Mirai was advertised by Toyota and its dealership network as having a range of over 400 miles on a single tank of hydrogen on numerous Toyota websites.

77. For Plaintiffs, the over-400-mile range was a major selling point for the Mirai. That meant the Mirai, unlike many other "zero emissions" vehicles which had much lower ranges, could be driven in a convenient fashion. Plaintiffs relied on both Toyota's written advertising and their dealerships' advertising, as well as verbal comments by the dealerships' salespersons that the Mirai, in fact, could be driven over 400 miles on a single tank of hydrogen. Plaintiffs would not have purchased the Mirai if it, in fact, was not capable of achieving the advertised over-400-mile range in ordinary use.

78. The Mirai is not capable of being driven anywhere close to 400 miles on a single tank of hydrogen in ordinary use. Despite the Plaintiffs' diligent efforts to maximize the Mirai's range through conservative driving practices, such as refraining from using air conditioning, avoiding rapid acceleration, maintaining moderate speeds, driving steadily with closed windows, and not carrying heavy loads, they have never succeeded in attaining a range exceeding approximately 270 miles per tank.

79. Another prominent feature of the false advertising by Toyota was the complimentary $15,000 fuel card that Toyota provided to customers who leased or bought the Mirai. At the time, Toyota sales representatives consistently assured Plaintiffs that this fuel card would cover their fuel costs for over three years, considering hydrogen prices ranging from $13 to $16 per kilogram just last year. Furthermore, Plaintiffs were given explicit assurances that these prices would decrease in the future.

80. Plaintiffs were led to believe that the Mirai would be a more cost-effective choice compared to traditional gasoline-powered cars and electric vehicles. Presently, the cost for hydrogen fuel has more than doubled, and filling up the Mirai is now more

- 12 -

**FIRST AMENDED COMPLAINT**

expensive than refueling the average heavy-duty gas-powered truck. The deceptive statements made by Toyota concerning the Mirai's range capabilities and the alleged benefits and cost-effectiveness of the Mirai compared to competitors played a significant role in the Plaintiffs' decision to lease or purchase the vehicle, and these statements constitute a direct violation of the Lanham Act.

81.    Indeed, with the fuel card and rebate that Toyota offered the Mirai appeared to be an attractive purchase.

82.    Toyota also engaged in an active concealment as to the refueling experience and the fact that are simply not enough operable hydrogen fuel stations to make a hydrogen retail car a viable reliable option.

83.    In short Toyota advertised the car as though it was another regular luxury sedan comparable to other products in its fleet when in fact it was an untrustworthy hellish car to be locked into.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT – CAL CIV CODE SECTION 1750

## (AGAINST TOYOTA MOTOR SALES USA INC.)

84.    Plaintiffs incorporate herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

85.    The Plaintiffs sent a letter on December 12, 2023 and the prior and instant complaint serve as notice as to the necessary cure period to ameliorate the numerous violations of the CLRA addressed herein, and Plaintiffs further sent a letter on January 1, 2024 to this effect.

86.    The CLRA is a nonexclusive statutory remedy for unfair methods of competition and for unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods to any consumer. (*Reveles v. Toyota by the Bay* (1997) 57 Cal.App.4th 1139, 1154.)

**FIRST AMENDED COMPLAINT**

87.    Also, Civil Code section 1760 provides that the overall purpose of the CLRA is to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to ensure protection.

88.    A CLRA claim based on a material omission, as with Toyota USA's material omission with regard to the Mirai's 400+ miles of range, arises when defendants create affirmative misrepresentations while suppressing other material facts within its knowledge but not known to consumers. (*Klein v. Chevron USA, Inc*. (2012) 202 Cal.App.4th 1342,1383.)

89.    Civil Code section 1770, subdivision (a)(5) provides that it is unlawful to represent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which they do not in fact have. This is exactly what Toyota did. Specifically, Toyota asserted that the Mirai boasts a 400+mile range, whereas in truth, the plaintiffs are unable to achieve more than 270 miles on a full tank.

90.    Similarly, Civil Code section 1770(a)(7) provides that it is unlawful to represent that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. Toyota marketed the Mirai to Plaintiffs by stating that the car featured a 400-mile range. The only reason Toyota made this representation was to make it appear that the Mirai was of a particular standard or quality worth buying. In reality, however, the sMirai only lasts about 280 miles, and in many cases, even less.

91.    Furthermore, Toyota failed to disclose the significant safety hazards associated with the vehicle. Hydrogen is a highly flammable and explosive substance. While driving, Plaintiffs encountered warnings on their dashboard indicating, "A malfunction in the Fuel Cell System has been detected. Continuing to drive may be hazardous. Pull over in a secure location and get in touch with your Toyota dealer to have your vehicle inspected." After conducting an examination, Toyota never identified a resolution.

**FIRST AMENDED COMPLAINT**

92.     Toyota also allowed their advertisers and agents tell Plaintiffs – falsely – that fuel would grow more accessible and the process would be similar to filling up a tank like a gas car.  This was a lie.  Fuel is scarce.  Pumps frequently do not work.

93.     Toyota enticed Plaintiffs with a substantial and appealing incentive—the provision of a $15,000 fuel card to cover their hydrogen fuel costs. This incentive was presented to Plaintiffs with specific assurances from Toyota sales representatives that the fuel card would sufficiently cover their fuel expenses for over three years. These assurances were grounded in the context of hydrogen prices ranging from $13 to $16 per kilogram just the previous year. Furthermore, Plaintiffs were led to believe that these hydrogen fuel prices would decrease in the future, making the subject Vehicle a more cost-effective choice compared to conventional gasoline-powered cars and electric vehicles. Plaintiffs reasonably relied on these assurances when entering into the contract.

## FIFTH CAUSE OF ACTION

### CALIF. ROSENTHAL ACT

### CALIF. CIV. CODE §§ 1788-1788.32
### (AGAINST TOYOTA FINANCIAL SERVICES)

94.     Plaintiffs incorporate herein each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

95.     Plaintiffs and Defendants entered into written contracts in which Defendants had induced Plaintiffs with both 1) specific representations in written advertisements and 2) oral representations from sales representatives regarding the vehicle's performance, including a claimed 400-mile range, and 3) by a general leveraging of Toyota's brand in which they explicitly stated this car would be a luxury blue chip product from Toyota and actively concealed the plain unreliability that is associated with the hydrogen fuel system that would cost Plaintiffs hundreds of hours in inconveniences.

**FIRST AMENDED COMPLAINT**

96.     In short, the Mirai that Defendants sold Plaintiffs to induce them to sign a contract for hefty monthly payments does not resemble what Toyota actually sold to Plaintiffs.

97.     Plaintiffs have attempted to trade-in the Mirai or sell the Mirai back to Toyota and Toyota values the Mirai at a 90 percent loss from its purchased value.

98.     Plaintiffs also have to make monthly payments for the Mirai even if they were unable to use the car for a month or longer due to a lack of fuel, or malfunction of the Mirai.

99.     Plaintiffs would also have to front monies for rental cars, towing fees and other associated fees that Toyota would force Plaintiffs into, which was a financial stress that Toyota never paid Plaintiffs for, or told them about ahead of time.

100.    By repeatedly collecting on debt from Plaintiffs for a consumer product which they knew did not resemble the representations about the actual product, especially for the times that Plaintiffs could not use the product, Defendant exhibited false, deceptive, and misleading representations in connection with their attempt to collect a debt in violation of 15 U.S.C. § 1692e of the Federal FDCPA; and engaged in unfair and unconscionable means in an attempt to collect a debt in violation of 15 U.S.C. § 1692f of the Federal FDCPA.

101.    These violations of the FDCPA are incorporated into the Rosenthal Act via Calif. Civil Code § 1788.17. 57. By collecting on a debt with the threat that Plaintiffs product would be repossessed and their credit score tarnished and collecting on a debt that was fabricated through false representations, Defendant has engaged in harassing, oppressive, and abusive conduct in violation of 15 U.S.C. § 1692d of the Federal FDCPA; uttered false, deceptive, and misleading representations in connection with their attempt to collect a debt in violation of 15 U.S.C. § 1692e of the Federal FDCPA; threatened and attempted an action that cannot be legally taken in violation of 15 U.S.C. § 1692e(5) of the Federal FDCPA; engaged in unfair and unconscionable means in an attempt to collect a debt in violation of 15 U.S.C. § 1692f of the Federal

**FIRST AMENDED COMPLAINT**

FDCPA; and constitutes unlawful threats of dispossession when dispossession is exempt by law in violation of 15 U.S.C. § 1692f(6)(C) of the Federal FDCPA. Each of these violations of the FDCPA are incorporated into the Rosenthal Act via Calif. Civil Code § 1788.17. 58.

102.   As a result of these violations, Plaintiffs suffered emotional distress as they were locked into making payments for a product that only inconvenienced them with no way out, or else Toyota would destroy their credit.

103.   Plaintiffs are entitled to relief and redress for these violations, as they have suffered harm and financial loss as a result of Defendants' actions.

<u>SIXTH CAUSE OF ACTION</u>

**VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE**

**(AGAINST ALL DEFENDANTS)**

104.   Plaintiffs repeat and reallege each and every allegation set forth above as if reasserted and realleged herein.

105.   California Business and Professions Code §17200, et seq., prohibits unfair competition, which includes any unlawful, unfair or fraudulent business act.

106.   Defendants committed violations under the aforementioned statutes and codes; and their acts are per se violations of the California Business and Professions Code Section 17200 et seq.

107.   The harm caused by Defendants' conduct outweighs any benefits that Defendants' conduct may have.

108.   Other people are likely to be deceived by the Mirai sales conduct of Toyota as Plaintiffs were in fact deceived, by Defendants' conduct.

109.   Defendants were unjustly enriched by committing said acts with the revenue from Plaintiffs and especially gleaned fresh data on consumer habits; retail and commercial market insight; federal and state legislative efforts to ease their introduction of new and experimental technology into the largest American state.

**FIRST AMENDED COMPLAINT**

110.   As a result of Defendants' conduct, Plaintiffs were harmed and suffer damages including but not limited to: (a) monetary losses, (b) humiliation that this car would be helpful and usable like any other car only to be duped and watch Toyota's own executives publicly admit the Mirai is a total disaster at the retail level, yet Plaintiffs are stuck with these giant mortgages on these cars, (c) stress that they would not be able to travel to the places they were needed, (d) anxiety that the car was unsafe, as it inaccurately self-diagnoses itself, and may be truly experimental, (e) aggravation and sleepless nights; high interest rates on certain loan(s); loss of the ability to purchase and benefit from the funds expended on servicing the debt created by Toyota.

111.   That as a direct and proximate result of Defendants' unlawful, unfair and fraudulent business practices as alleged herein, Plaintiffs suffered substantial injury in fact and lost money and time.

112.   That pursuant to California Business and Professions Code § 17200, et seq., Plaintiffs are entitled to recover their actual damages and restitution.

## SEVENTH CAUSE OF ACTION

### NEGLIGENCE

### (AGAINST ALL DEFENDANTS)

113.   Plaintiffs repeat and reallege each and every allegation set forth above as if reasserted and realleged herein.

114.   Toyota has a duty to ensure their sales tactics, sales training and sales personnel all follow the relevant laws and regulations and to especially follow their own internal policies and procedures.

115.   Toyota focuses on profit over truth in their advertising and sales processes.

116.   Toyota causes Plaintiffs a loss as they are knowingly selling and sold a car that does not achieve the advertised fuel capacity, is not easy to refuel, causes Plaintiffs to have to front charges on their credit cards and myriad other losses and frustrations to Plaintiffs.

**FIRST AMENDED COMPLAINT**

117.    Toyota causes Plaintiffs a continued loss as they are stuck with a car that causes stress, anxiety, loss of funds, loss of time and constitute per se violations of the California Lemon Law, Lanham Act and other laws.

118.    Defendants' sales of the Mirai is a proximate cause of the loss Toyota causes Plaintiffs and potential harm that could befall many other California citizens.

## EIGHTH CAUSE OF ACTION

## VIOLATION OF THE FAIR CREDIT REPORTING ACT

## (AGAINST ALL DEFENDANTS)

119.    Plaintiffs repeat and reallege each and every allegation set forth above as if reasserted and realleged herein.

120.    Plaintiffs would not have given any credit reporting agencies written instructions or permission to provide any consumer reports to Defendant if they knew that Defendant would breach its obligations to the Plaintiff and sell a vehicle that was not able to perform as advertised.

121.    Defendants conducted hard inquiries or "hard pulls" and obtained Plaintiffs' credit reports for an impermissible purpose under the FCRA.

122.    Defendants did not obtain Plaintiffs' credit report for a legitimate business need.

123.    Plaintiffs' consumer reports were not obtained for a purpose for which the consumer report is authorized to be furnished under the FCRA.

124.    The purpose for which Plaintiffs' consumer report was obtained by Defendants was not certified in accordance with the FCRA.

125.    As a result of Defendants conducting hard pulls on Plaintiffs' credit reports, Plaintiffs suffered damages, which include, but are not limited to Plaintiffs' credit scores being lowered.

126.    That as a result of Defendants, Plaintiff suffered actual damages, including, but not limited to: humiliation, shame, stress, anxiety and aggravation.

### NINTH CAUSE OF ACTION

### FRAUD

### (AGAINST ALL DEFENDANTS)

127.  Plaintiffs repeat and reallege each and every allegation set forth above as if reasserted and realleged herein.

128.  Toyota concealed or suppressed material facts about the Mirai (fuel range, refueling issues, etc.).

129.  Toyota had knowledge of these material facts.

130.  These material facts were not within reasonably diligent attention, observation, and judgment of the Plaintiffs

131.  Toyota suppressed or concealed these facts with the intention that the Plaintiffs be misled as to the true condition of the Mirai.

132.  Plaintiff was reasonably so misled.

133.  Plaintiff suffered damages as a result.

### DEMAND FOR JURY TRIAL

134.  Plaintiffs hereby demand trial by jury in this class action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Toyota as follows:

1.    For general, special, punitive and actual damages according to proof at trial and at least $25,000,000 as to all affected;

2.    For rescission of any lease or purchase agreement and restitution of all monies expended;

3.    For diminution in value;

4.    For incidental and consequential damages according to proof at trial;

5.    For civil penalty in the amount of two times Plaintiffs' actual damages per the Song-Beverly Act;

6.    For prejudgment interest at the legal rate;

**FIRST AMENDED COMPLAINT**

7.    For reasonable attorney's fees and costs of suit under the FDCPA and FCRA and statutory penalties;

8.    For declaratory judgment and injunctive relief that Toyota formally discontinue its Mirai model sales in the United States, especially California;

9.    For declaratory judgment and injunctive relief that Toyota violated the False Advertising Act; and

10.    For other further relief as the Court may deem just and proper.

## **TRIAL BY JURY**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial by jury.


Dated:  January 1, 2023          LAW OFFICES OF JASON M. INGBER, PC


                                 */s/ Jason M. Ingber*
                                 Jason M. Ingber
                                 Attorneys for Plaintiffs

**FIRST AMENDED COMPLAINT**